| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Prudential Mortgage Capital Company, LLC, et al., § § § § Plaintiffs, § § versus § § Namir Faidi, et al., § § Defendants. § | Civil Action H-08-1310 |

## Findings and Conclusions

1.  *Background.*

On June 15, 2007, Seawall I, Ltd., issued a promissory note in favor of Prudential Mortgage Capital Company, LLC, for $13,860,000; it received the proceeds. The money was lent on a moderately complex security arrangement and secured by a small shopping complex in Galveston, Texas, named Piazza Blanca.

The principal of Seawall, Namir Faidi, indemnified Prudential and guaranteed repayment under the note. Under the indemnity and guaranty, Faidi assumed personal liability for payment to Prudential for all losses to Prudential arising out of fraud, material representation, or failure to disclose a material fact.

Seawall also supplied Prudential with an irrevocable letter of credit for $1,260,000 as further security. Prudential withheld some of the proceeds to pay the first few months' installments because adequate rent was not being collected.

Seawall made no regular monthly installment to repay Prudential. After having consumed the withheld installments, Prudential declared a default, accelerated the note's maturity date, and demanded full payment of the debt.

2.  *Debt.*

Prudential drew on the letter of credit and applied its proceeds to the debt. It notified Seawall of its intention to foreclose its interest in the property. Prudential agreed to forbear

for a short term and postponed the foreclosure. Seawall did not pay the money due on December 1, 2007, under the forbearance agreement.

Prudential transferred the asset and its security interests to PMCF Properties, LLC. Properties bid successfully at the foreclosure sale, acquiring Piazza Blanca with its bid of $12,000,000. After calculating the deficiency after foreclosure to be $3,246,345.82, Properties demanded that Seawall and Faidi pay it the $3,246,345.82. They have not paid.

3.   *Fiction.*

To persuade Prudential to lend to Seawall, Faidi furnished Prudential papers that he represented to be leases and rent rolls listing tenants and the rents they were paying or had committed to pay. He otherwise represented that the place had paying tenants and tenants making improvements to their spaces.

   A.   *Bluegreen.*

With documents and behavior, Faidi and Seawall led Prudential to believe that Piazza Blanca's largest space would be occupied by Bluegreen.

Faidi had a copy of a lease between Seawall and Bluegreen dated June 29, 2006, with the signature "D. Donovan," sent to CB Richard Ellis. Ellis had been hired by Prudential to appraise Piazza Blanca as one part of Prudential's credit evaluation. After the foreclosure, Prudential learned that the signature "D. Donovan" on the lease for Bluegreen was not signed by David Donovan, who was vice president of acquisitions for Bluegreen, or by anyone else with Bluegreen's authority.

Seawall delivered to Prudential a tenant's estoppel certificate from Bluegreen dated June 11, 2007, before it made the loan. In the paper, Bluegreen certified that it had a 10-year lease and that it had paid rent under it. The certified rent roll for May 1, 2007, signed by Faidi shows that Bluegreen had a lease, was paying rent, and was constructing improvements for approximately 25% of the space at Piazza Blanca.

In reality, Bluegreen never executed a lease, occupied space, or paid rent for Piazza Blanca. Bluegreen was not a tenant, and it never built anything on the property.

B.  *Mia Bella.*

Similarly, before the money was lent, Seawall delivered a lease between Seawall and Mia Group, LLC., dated February 21, 2007, and signed by Julio Cesar Garcia on behalf of Mia Group, LLC, to Prudential.

Faidi certified a rent roll on May 1, 2007, showing that Mia Group had a lease and was building improvements in approximately 10% of the space at Piazza Blanca. At the time, he used the documents to support Seawall's application, Faidi knew directly that Mia and Garcia were signing as a favor to him and that they had no intention or ability to occupy and pay rent on the space described in the lease.

Mia Group was never a tenant or ever intended to be a tenant. The lease for Mia Group given to Prudential was a fake.

C.  *Net Worth.*

Faidi misrepresented his financial condition at the time of the loan. A balance sheet dated October 30, 2006, reported Faidi's net worth as $51 million. Two days later, his net worth supposedly rose to $58 million. On March 30, 2007, another balance sheet reported him to be worth $25 million. These are unsupported, and their magnitude and frequency show that Faidi's balances were fiction.

D.  *Fees.*

Faidi had financial problems that he did not disclose to Prudential. In particular, Seawall and Faidi did not reveal to Prudential that Piazza Blanca owed license fees to Galveston County for $64,408 at the closing of the loan.

E.  *Effect.*

Faidi knew that these documents and information he gave to Prudential were false. Prudential relied on Faidi's net worth, the leases, and the rent rolls he gave it in calculating the amount of the loan and approving the loan of $13,860,000. As a result, Prudential was damaged in the amount of $3,246,345.82 from the deficiency following foreclosure, plus $64,408 for unpaid license fees. The plaintiffs attorney's fees for the prosecution of this claim totaled $500,000.

4.  *Conclusion.*

Seawall and Faidi breached the loan agreements by knowingly supplying false and misleading information. Faidi's misrepresentations and omissions willfully and maliciously harmed Prudential by inducing it to make a loan to Seawall it otherwise would not have made—fraud, plainly.

Because of Faidi and Seawall's false pretenses, forged papers, and other frauds, Prudential lent them $13,860,000. As the only shareholder of Seawall, Faidi appropriated the funds for his own benefit, and Seawall and Faidi breached the terms of the loan agreement when they did not pay the damages, losses, and expenses after proper demand.

After Properties bought Piazza Blanca at foreclosure for nearly $2.5 million above the fair market value, the remaining debt was $3,246,345.82 for the property and $64,408 for the license fees. Prudential is entitled to the deficiency of $3,246,345.82. Because defendants failed to pay the license fees, Properties paid Galveston County $64,408 for license fees incurred while Seawall owned Piazza Blanca.

Faidi is individually and personally liable to plaintiffs for the loan deficiency of $3,246,345.82 and the delinquent license fees of $64,408.

Prudential and Properties are entitled to recover their reasonable and necessary attorney's fees from Faidi. Faidi is individually and personally liable for any expenses, costs, and attorney's fees incurred by plaintiff, amounting to $500,000.

Faidi repeatedly made false representations about the fiscal and physical condition of Seawall's property, leading the lenders to believe that the property and he were in better financial shape than they were. Among Faidi's representations were false leases and rent rolls that Faidi intended to deceive Prudential as it evaluated Seawall's loan application. Prudential relied on the leases and rent rolls when it made the loan.

Perhaps Faidi hoped Mia Bella's space would be filled, and at one time expected Bluegreen to sign a lease, but at no time were the representations Faidi made to Prudential about either entity real. A hope or expectation is not a fact. Because Prudential and Properties demonstrated by clear and convincing evidence that they were harmed by Faidi's fraud, they are entitled to exemplary damages of $25,000.

Signed on January 29, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge